**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| METHODIST FAMILY HEALTH, | : | |
| INC. | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. _____ |
| | : | |
| CORE SOLUTIONS, INC., | : | |
| Defendant. | : | |

## COMPLAINT FOR DECLARATORY JUDGMENT AND DAMAGES

Plaintiff, Methodist Family Health, Inc., ("MFH"), by and through its attorneys, for its Complaint against Defendant Core Solutions, Inc. ("Core"), alleges, on knowledge as to its own actions, and otherwise upon information and belief, as follows:

### NATURE OF THE ACTION

1. This is an action for declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and Rule 57 of the Federal Rules of Civil Procedure, to resolve an actual controversy between MFH and Core arising out of the parties' Hosted Subscription Agreement dated September 4, 2024 (the "Agreement") and its associated Statement of Work (the "SOW"), under which Core agreed to

1

implement and provide access to its Cx360 hosted electronic health record software and support services[1].

2.    Plaintiff MFH, as a behavioral healthcare provider to approximately 2,400 children and families in Arkansas annually, MFH purchased the software and subscription agreement from Core to assure the proper maintenance of electronic patient records critical to the treatment process and as required by both state and federal regulatory authorities.

3.    Despite its contractual obligations otherwise, Core failed to deliver a configured, validated, and operationally ready solution as required by the Agreement and the SOW.

4.    A direct consequence of Core not performing its contractual obligations is MFH's staff unexpectedly devoting thousands of hours to the project, including a substantial portion of its senior clinical leadership's time.

5.    Additionally, Core's failure to contractually perform has caused MFH to incur the additional unanticipated cost and operational burden of maintaining two electronic medical record systems instead of one.

6.    Since medical record creation, retention and electronic transfer ability are critical to any medical provider and are heavily regulated, it is critical that the

---

[1] MFH would have attached the Agreement and SOW as exhibits to this Complaint, but Defendant maintains that the Agreement and SOW are confidential and cannot be disclosed to third parties. Although Plaintiff disputes that assertion, Plaintiff will await the Court's ruling on the confidentiality of the Agreement and SOW and the Court's direction regarding how these documents should be provided to the Court.

electronic records system properly operates or else patient care can suffer or be unnecessarily delayed.

7. Therefore, time was and is of the essence for proper implementation of the Cx360 hosted electronic health record software and support services but Core's continuing failure is causing ongoing operational and potential reputational harm to MFH because of the unexplained and undue delay in properly implementing a fully functional software system for electronic records.

8. MFH repeatedly put Core on notice of the failure to achieve the timely implementation of the new software system but Core has not addressed and resolved its material breaches in implementation as required by the agreement thus requiring MFH to terminate the Agreement to mitigate further damage.

9. Core refutes it has breach its obligations under the Agreement thereby creating a definite and concrete controversy therefore exists between the parties concerning their respective rights and obligations under the Agreement, including whether the Agreement is now terminated.

10. MFH seeks a judicial declaration that Core materially breached its obligations under the Agreement; that after notice of breach and failure to cure the Agreement is no longer in force and effect; and that MFH has no further obligation to perform under, or to make any further payment pursuant to, the Agreement or the SOW.

11. MFH further seeks to recover the contractual amounts it paid to Core to date , together with its other damages resulting from Core's breach.

## THE PARTIES, JURISDICTION & VENUE

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), in that this is a civil action between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

13. Plaintiff, MFH, is a for profit corporation organized under the laws of the State of Arkansas, with its principal place of business at 1600 Aldersgate Road, Little Rock, Arkansas 72205. MFH is therefore a citizen of the State of Arkansas.

14. Defendant, Core, is a corporation formed and incorporated under the laws of the Commonwealth of Pennsylvania, with its principal place of business at 620 Freedom Business Center Drive, Suite 400, King of Prussia, Montgomery County, Pennsylvania 19406. Core is therefore a citizen of the Commonwealth of Pennsylvania, which lies in this district.

15. An actual controversy of sufficient immediacy and reality exists between the parties, who have adverse legal interests concerning their rights and obligations under the Agreement, to warrant the issuance of a declaratory judgment.

16. Venue is proper in this district under 28 U.S.C. § 1391, in that Core resides in this district, a substantial part of the events or omissions giving rise to the claim occurred in this district, and the parties agreed to this venue in their contract.

## FACTUAL BACKGROUND

17. MFH is a non-profit behavioral health provider that operates a multi-program, multi-location continuum of care.

18.     Core is a vendor of the Cx360 hosted electronic health record software and related implementation and support services (hereinafter referred to as the "Solution").

## The Hosted Subscription Agreement dated September 4, 2024

19.     On September 4, 2024, MFH and Core entered into the Agreement, under which Core granted MFH the right to access and use the Solution on a subscription basis and agreed to implement the Solution and provide related services. Due to confidentiality purposes, the Agreement will be produced subject to a Court approved Confidentiality Order.

20.     The Agreement has an initial term of sixty (60) consecutive months. The one-time implementation fee is $224,500, and the annual subscription fee is $170,000, for a total of approximately $1,074,500 over the initial term.

21.     Section 12 of the Agreement provides that it is governed by and construed in accordance with the law of the Commonwealth of Pennsylvania, without regard to its conflict of laws principles and, pursuant to Section 12 of the Agreement, the parties agreed that "[t]he venue for any litigation arising under or out of this Agreement shall be Pennsylvania."

## Core's Implementation Obligations

22.     Under Section 1.2 of the Agreement, the Solution was to be implemented pursuant to a mutually agreed Statement of Work specifying the consulting, development, customization, implementation, data conversion, and other services to

be provided by Core. Due to confidentiality purposes, the SOW will be produced under seal or as otherwise agreed by the parties.

23.    Under Section 8.1 of the Agreement, Core warranted that the Solution would materially comply with its Documentation, including the Traceability Matrix, and that its services would be performed in a competent and workmanlike manner.

24.    The SOW organizes the implementation into eight sequential stages, culminating in Stage 8, "Final Acceptance and Transition to Support." Each stage is broken down into defined activities, deliverables, and a responsibility matrix, and the SOW provides that all defined deliverables must be formally accepted by MFH to indicate completion of each stage and the corresponding milestone.

25.    Core was responsible for providing project management services to manage and operate the project through go-live, for configuring and validating the Solution against the Traceability Matrices and detailed specification documents that form the foundation for final acceptance, and for migrating MFH's data prior to go-live.

26.    Core's obligation was to deliver a configured, validated Solution that MFH accepted and that achieved the SOW's Design Acceptance, Go-Live, and Final Acceptance milestones.

27.    While the SOW describes its schedule in terms of estimated timelines and project milestones, Core's core obligation was not merely to meet a date but to deliver, and obtain MFH's acceptance of, a functioning Solution. The implementation

was estimated to be completed over approximately twelve months, and the parties later targeted a July 1, 2026 go-live date.

### Core's Failure to Perform & MFH's Demand for Cure

28. Core failed to deliver a configured, validated, and operationally ready Solution and failed to achieve the SOW's Go-Live and Final Acceptance milestones.

29. As of mid-2026, essential implementation work remained incomplete, including the completion of discovery, system configuration, detailed specification documents, user acceptance testing, interface and billing validation, data migration, end-user training, and the go-live launch playbook.

30. On May 29, 2026, MFH provided Core with formal written notice of material breach and a demand to cure pursuant to Section 2 of the Agreement, identifying numerous material breaches relating to Core's implementation obligations under the Agreement and the SOW. A true and correct copy of the notice is attached hereto as **Exhibit A**.

31. On June 12, 2026, Core, through counsel, responded, disputing that it had materially breached and asserting that the SOW established only "estimated timelines," while stating that it would work to address the issues identified in MFH's notice subject to a reservation of rights. A true and correct copy of the June 12, 2026 letter and its enclosures is attached hereto as **Exhibit B**.

32. In its response, Core acknowledged that substantial implementation work remained outstanding and prospective, including a gap analysis, an updated Traceability Matrix, a software build plan, an implementation schedule, completion

of user acceptance testing, data migration, and other project management deliverables.

33. Core did not demonstrate that the deficiencies identified in MFH's May 29, 2026 notice had been cured.

34. Core's response demonstrates that its material breaches will not be cured within the Agreement's ninety-day cure period and that awaiting its expiration would have been futile.

### MFH's Termination

35. On August 14, 2026, MFH terminated the Agreement on the grounds that Core failed to remedy its material breaches, that the implementation remained materially incomplete, and that Core's own communications confirmed that essential implementation work remained prospective rather than complete. A true and correct copy of the termination notice is attached hereto as **Exhibit C**.

36. Core disputes that it materially breached the Agreement and disputes that MFH's termination was valid and effective. An actual, definite, and concrete controversy therefore exists between MFH and Core concerning their respective rights and obligations under the Agreement.

37. All conditions precedent to the relief MFH seeks have been performed, have occurred, or have been waived or excused.

38. To the extent any pre-suit obligations apply, the parties engaged in extensive senior-level communications regarding the dispute without resolving it, and further resort to a non-binding process would be futile. Section 12 of the

Agreement provides only for senior-officer negotiation following by non-binding arbitration before the AAA, which does not bar this action and, in any event, has been rendered futile by the parties' unsuccessful senior-level efforts to resolve this dispute.

## COUNT I
### Declaratory Judgment – 28 U.S.C. §§ 2201 and 2202

39.    MFH repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

40.    Under 28 U.S.C. § 2201(a), "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

41.    An actual controversy exists between MFH and Core, having adverse legal interests, that is of sufficient immediacy and reality to warrant declaratory relief.

42.    MFH contends that Core materially breached the Agreement, MFH validly terminated the Agreement, and MFH has no further obligation to perform or to pay under the Agreement.

43.    Core disputes each of the foregoing contentions and maintains that the Agreement remains in force.

44.    Under Pennsylvania law, a material breach by one party discharges the non-breaching party from its further obligations under the contract, and a party that

is itself in material breach may not insist upon the other party's continued performance.

45. Where a breach is so serious that it goes to the essence of the contract and renders the breach incurable, the non-breaching party may terminate notwithstanding a contractual cure period.

46. Core materially breached the Agreement and the SOW by, among other things, failing to deliver a configured, validated, and operationally ready Solution, failing to achieve the SOW's Go-Live and Final Acceptance milestones, and failing to perform its implementation services in a competent and workmanlike manner.

47. Core's breaches deprived MFH of the essential benefit of its bargain and were not cured.

48. MFH is entitled to a judicial declaration that: (a) Core materially breached the Agreement and the SOW; (b) MFH's termination on August 14, 2026 was valid and effective and the Agreement is terminated; (c) MFH is discharged from, and has no further obligation to perform under, the Agreement or the SOW, including any obligation to make further payment; and (d) Core is not entitled to enforce the Agreement or the SOW against MFH or to recover any further amounts thereunder.

49. A judicial declaration is necessary and appropriate at this time so that the parties may ascertain their respective rights and obligations under the Agreement, and MFH has no adequate remedy at law to resolve the controversy.

## COUNT II
## Breach of Contract

50.     MFH repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

51.     The Agreement and the SOW are valid and binding contracts between MFH and Core, supported by consideration and setting forth the parties' essential terms.

52.     MFH performed its obligations under the Agreement and the SOW, or was ready, willing, and able to perform, except to the extent its performance was excused or discharged by Core's material breach.

53.     Core breached the Agreement and the SOW by, among other things, failing to deliver a configured, validated, and operationally ready Solution, failing to achieve the SOW's Go-Live and Final Acceptance milestones, and failing to perform its implementation services in a competent and workmanlike manner as required by Section 8.1 of the Agreement.

54.     As a direct and proximate result of Core's breach, MFH has been damaged, including through the fees it paid to Core, including the $224,500 implementation fee and subscription fees, and additional costs incurred as a result of Core's nonperformance, in an amount to be determined at trial.

55.     MFH is entitled to damages sufficient to return it to the position it would have occupied but for Core's breach.

56.     In the alternative, because Core's material breach caused a failure of the consideration for which MFH bargained, MFH is entitled to rescission of the

Agreement and the SOW and to restitution of all amounts it paid to Core. MFH pleads its claims for damages and for rescission and restitution in the alternative and will elect between these remedies before entry of final judgment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, MFH respectfully requests that the Court enter judgment in its favor and against Core as follows:

A.    Declaring that Core materially breached the Hosted Subscription Agreement and the associated Statement of Work;

B.    Declaring that the Agreement is no longer in force and effect;

C.    Declaring that MFH is discharged from, and has no further obligation to perform under, the Hosted Subscription Agreement or the Statement of Work, including any obligation to make further payment, and that Core may not enforce the Agreement or the Statement of Work against MFH or recover any further amounts thereunder;

D.    On Count II, awarding MFH damages in an amount to be determined at trial, including the amounts MFH paid to Core, or, in the alternative, ordering rescission of the Agreement and the Statement of Work and awarding MFH restitution of all amounts it paid to Core;

E.    Awarding MFH pre-judgment and post-judgment interest, its costs of suit, and, to the extent permitted by contract or law, its reasonable attorneys' fees; and

F.      Granting MFH such other and further relief as the Court deems just and proper.

Respectfully submitted,

ALLERTON BELL, P.C.

By: */s/* Andrew N. Howe

 Pa Id No. 56337
1095 Ben Franklin Highway East
 Douglassville, Pennsylvania 19518
 Telephone: (610) 385-0055
 Facsimile: (619) 385-0056
 Ahowe@allertonbell.com

*Counsel for Plaintiff*